UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY HERNANDEZ, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>BEDFORD DENTAL, L.L.C.,<br><br>Defendant | Case No. 1:25-cv-06787<br><br>Honorable Jeremy C. Daniel<br><br>Hon. Magistrate Judge Young B. Kim |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
RULE 12(b)(6) MOTION TO DISMISS**

## MEMORANDUM OF LAW

Plaintiff Mary Hernandez ("Plaintiff") respectfully opposes Defendant Bedford Dental, L.L.C.'S ("Defendant") Rule 12(b)(6) Motion to Dismiss, ECF No. 20 ("Mot."), for the reasons stated herein.

### I. INTRODUCTION

Defendant asks this Court to dismiss Plaintiff's Telephone Consumer Protection Act ("TCPA") claims by adopting a strained interpretation of the statute, which has been rejected by the Supreme Court, every Circuit Court of Appeals, and most district courts. Defendant's Motion hinges on a single decision—*Jones v. Blackstone Medical Services, LLC*, No. 1:24-cv-01074, 2025 WL 2042764 (C.D. Ill. July 21, 2025), *appeal filed*, *Steidinger v. Blackstone Medical Services, LLC*, No. 25-2398 (7th Cir. Aug. 12, 2025)—that misapplies basic principles of statutory interpretation and disregards over two decades of consistent agency interpretation and judicial precedent.

Defendant incorrectly claims that text messages are not "calls" under the TCPA because Section 227(c)(5) "does not mention text messages or SMS messages[.]" Mot. at 4. It is unsurprising that the statute does not use the term "text message" because the statute was enacted in 1991, before the first-ever text message was sent. This Court need look no further than the recent decision in *Wilson v. MEDVIDI INC.*, No. 5:25-cv-03996, 2025 WL 2856295 (N.D. Cal. 2025), which thoroughly rejected this exact argument. In determining whether Section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage. *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 79 (1998)). As the *MEDVIDI* Court aptly stated, "[t]his tortured reasoning provides no basis to depart from the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Id.* at *3.

1

The *MEDVIDI* court observed that "[t]he TCPA itself does not define the term 'call,' which is 'a request, demand, or command, [especially] to come or assemble.'" *Id*. (quoting *Call*, Black's Law Dictionary (12th ed. 2024)). Critically, the court noted that "[t]his definition makes clear that a 'call' is distinguished from other communications such as a 'lesson' or 'message' **by the meaning it conveys, not the form it takes**." *Id*. (emphasis added). The court further noted that "[t]he Ninth Circuit has already held that the term refers to both oral and written communications," which held the "'ordinary, contemporary, common meaning' of the 'call' is 'to communicate or try to get into communication with a person by a telephone.'" *Id*. at *2 (quoting *Satterfield v. Simon & Schuster*, Inc., 569 F.3d 946, 953–54 & n.3 (9th Cir. 2009).[1]

This common-sense interpretation is consistent with the purpose of the TCPA: to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls." S. Rep. No. 102-178, at 1 (1991). *See also L.A. Lakers, Inc. v. Fed. Ins*. *Co.*, 869 F.3d 795, 799 (9th Cir. 2017) ("When Congress passed the [TCPA] it sought to protect individuals against invasions of privacy, in the form of unwanted calls (and now text messages)[.]"). Defendant's attempt to distinguish between written and oral telephone solicitations contradicts the remedial nature of the TCPA and established precedent. Courts have consistently held that unsolicited text messages invade privacy interests no less than voice calls do. *See Hall v. Smosh Dot Com, Inc*., 72 F.4th 983, 985–86 (9th Cir. 2023) ("We have held that the receipt of unsolicited phone calls or text messages in violation of the TCPA is 'a concrete injury in fact sufficient to confer Article III standing.'") (quoting *Van Patten Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)); *Brickman v. Facebook, Inc.,* 230 F.

---

[1] The *Satterfield* court's conclusion was based in part on Chevron deference. *Id*. at 1041. Although Chevron has since been overruled, the Supreme Court has instructed that precedents relying on Chevron remain fully intact. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

Supp. 3d 1036, 1040 (N.D. Cal. 2017) ("A text message is a 'call' within the meaning of the TCPA.").

The *MEDVIDI* court held that "nothing in the text, structure, or purpose of the TCPA suggests the distinction between written and oral communications that Defendant urges the Court to adopt." 2025 WL 2856295, at *4. It found that a "telephone call" as used in 47 U.S.C. § 227(c)(5) encompasses text messages. *Id.* This Court should reach the same conclusion here.

The Supreme Court, every Circuit Court, and the majority of district courts overwhelmingly reject Defendant's contention that a text message is not a "call" under TCPA. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"); *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021) ("'[T]elemarketing text messages . . . present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA.'") (quoting *Van Patten*, 847 F.3d at 1043).[2]

---

[2] *See also Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 307 n.2 (11th Cir. 2025) ("We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages.") (citing *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003)); *Murphy v. DCI Biologicals Orlando, Ltd. Liab. Co.*, 797 F.3d 1302, 1305 (11th Cir. 2015) ("The prohibition against auto dialed calls applies to text message calls . . ."); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("[W]e hold that the receipt of an unwanted text message causes a concrete injury"); *Eisenband v. Schumacher Auto., Inc.*, No. 18-CV-80911, 2018 WL 7820549, at *2 (S.D. Fla. Oct. 23, 2018) (same); *Keating v. Peterson's Nelnet, LLC*, 615 Fed. App'x 365, 370 (6th Cir. 2015); *Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact for Article III purposes."); *Dawson v. Porch.com*, No. 2:20-cv-00604-RSL, 2024 WL 4765159, at *5 n. 4 (W.D. Wash. Nov. 13, 2024) ("The Court agrees with this analysis regardless whether deference to the agency's interpretation is appropriate or not.") (citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 403 (2024)); *Ragsdale v. Leadpoint, Inc.*, No. 2:24-cv-04542-MCS-SK, 2024 WL 5424125, at *3 (C.D. Cal. Nov. 5, 2024) ("Defendant calls for the Court 'to independently determine whether 47 C.F.R. § 64.1200(d)(4) applies to text messages.' . . . The Court puts Defendant's call on hold."); *Mantha v. Quotewizard.Com, LLC*, 347 F.R.D. 376, 387 (D. Mass. 2024) ("[T]he texts from [defendant] amounted to 'telephone solicitations' within the meaning of the TCPA."); *Misner v. Empire Auto Prot., LLC*, No. 2:24-cv-1282, 2024 WL 4688940, at *3-5 (S.D. Ohio Nov. 6, 2024) (receipt of unsolicited text messages supports a private right of action under Section 227(c)); *Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, 2025 WL 307039, at *4-7 (D. Ariz. Jan. 27, 2025) (same); *Bradshaw v. CHW Grp., Inc.*, No. 24-cv-00114, 763 F. Supp. 3d 641, 649 n.5 (D.N.J. 2025) (same); *Stamper v. Manus-Nw. Oral Health Ctr., Ltd.*, No. 23 C 05660, 2025 WL 2044093, at *1 n.1 (N.D. Ill. July 17, 2025) (citing *Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d

3

The Seventh Circuit has stated unequivocally that "unwanted text messages can constitute a concrete injury-in-fact for Article III purposes," providing a plaintiff standing to bring a TCPA claim. *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463 (7th Cir. 2020).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Fed. R. Civ. P. 8(a)(2)); *see also* Fed. R. Civ. P. 12(b)(6). The Supreme Court has expanded upon this, explaining that it "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether these requirements are satisfied on a motion to dismiss, the Supreme Court put forth a two-pronged analysis. First, the court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft,* 556 U.S. at 679. And second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## III. A TEXT IS A "CALL" UNDER THE TCPA AND PLAINTIFF HAS PLAUSIBLY PLED THAT DEFENDANT VIOLATED THE TCPA.

Defendant contends that a single use of the word "call" in Section 227(c)(5)'s private right of action means that the TCPA cannot apply to text messages. That's incorrect. As courts and the FCC have recognized, the statute's ordinary meaning, structure, and purpose refute that argument: the word "call" as used in the TCPA refers to any attempt to communicate by telephone, so the FCC may prohibit telemarketing texts to numbers on the Do Not Call

---

639, 646 (N.D. Ill. 2019) (noting that the TCPA applies to both "voice calls and text calls to wireless numbers")); *Davis v. Safe Sts. USA LLC*, 497 F. Supp. 3d 47, 54 (E.D.N.C. 2020) (holding that a single text message does constitute a concrete injury to support Article III standing for a TCPA claim).

4

("DNC") list. Because Section 227(c) is an express delegation of authority to the FCC, any doubt about that conclusion means that Congress intended the agency's judgment to control.

### A. The Plain Meaning of the Word "Call" Includes Text Messages.

To interpret a statutory term, courts must "look to the meaning of the word at the time the statute was enacted, often by referring to dictionaries." *Jackson v. Blitt & Gaines, P.C.,* 833 F.3d 860, 863 (7th Cir. 2016). And the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the "ordinary, contemporary, common meaning" of the word "call" in this context is "'to communicate with or try to get into communication with a person by a telephone.'" *Satterfield*, 569 F.3d at 953–54 & n.3 (9th Cir 2009) (quoting Webster's Third New International Dictionary 317-18 (2002)); *see also Lozano v. Twentieth Century Fox Film Corp*., 702 F. Supp. 2d 999, 1007 (N.D. Ill. 2010) (same). Courts have long recognized that the definition identified in *Satterfield*—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g., Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 742 (6th Cir. 2013); *Sagar v. Kelly Auto. Grp*., No. 21-cv-10540, 2021 WL 5567408, at *4 (D. Mass. 2021); *Schaevitz v. Braman Hyundai, Inc*., 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019). Texting is a means of communicating with someone by telephone. So, that definition encompasses texts.

That established meaning of the word "call" is especially clear in the nearby autodialer provisions in Section 227(b) of the original TCPA. Absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning across different provisions of a statute. *Henson v. Santander Consumer USA Inc*., 582 U.S. 79, 85 (2017). Here, the word "call" is used extensively in the provisions of the statute that prohibit automatic dialing technology and robocalls, which were also part of the statute when it was first enacted in 1991. Most notably, Section 227(b) prohibits using autodialer or robocall technology "to make any call … to any

5

telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A paging device in the early 1990s displayed an incoming message as text, with a phone number to call.[3] So the use of the word "call" in connection with pagers in Section 227(b) makes "clear that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1005; *see also Abbas v. Selling Source, LLC*, No. 09 CV 3413, 2009 WL 4884471, at *4 (N.D. Ill. 2009).

Indeed, the FCC determined in 2003 that, when the TCPA says "call," it means traditional voice calls and modern text messages. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003) (finding that the TCPA "encompasses both voice calls and text calls . . . including . . . short message service (SMS) calls.") [hereinafter 2003 FCC Order]. The FCC has adhered to that position ever since. *See In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8020 (2015) [hereinafter 2015 FCC Order]; *In re Hernandez*, No. EB-TCD-17-00024357, DA 18-1291, 2018 WL 6830220, at *1 (F.C.C. Dec. 21, 2018); 88 Fed. Reg. 20800, 20802 (Apr. 7, 2023); *In re Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*, 38 FCC Rcd. 12247, 12256–57 (2023) [hereinafter 2023 FCC Order].

To be sure, the FCC first interpreted the word "call" to include text messages in the context of the TCPA's prohibitions on autodialed calls in Section 227(b). But that is unsurprising, because the word "call" is used more extensively in that part of the statute, whereas Section 227(c) mainly uses the defined term "telephone solicitation." *See MEDVIDI*, 2025 WL 2856295, at *3. And the FCC has since confirmed in a formal regulation that its 2003

---

[3] *See, e.g.,* Paging Network, Inc., Annual Report 8 (1991), https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number to the subscriber").

6

interpretation of the word "call" also applies to text messages in the DNC List context, specifically. *See* 47 C.F.R. § 64.1200(e); 38 FCC Rcd. at 12256–57.

Although it is only briefly discussed in the relevant order, the FCC's initial interpretation of the word "call" to include texts in 2003 is especially helpful to understanding the word's original meaning as of 1991. *See* 18 FCC Rcd. at 14115. **When Congress originally drafted the TCPA, text messages didn't exist**. *See Keating v. Peterson's Nelnet, LLC*, 615 Fed. App'x 365, 370 (6th Cir. 2015) (deferring to the FCC's 2003 Order for this reason); *MEDVIDI*, 2025 WL 2856295, at *2 (looking at the "plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991[.]"). And texting didn't achieve widespead popularity until the 2000s. So the FCC's understanding of "call" in 2003 surely approximated its 1991 meaning more closely than our 2025 intuitions, which reflect a world where texting has been ubiquitous for decades. *Cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect.") (quoting *Edwards' Lessee v. Darby*, 25 U.S. 206, 210 (1827)).

The FCC's conclusion that "the term 'call' includes a text message" therefore reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *MEDVIDI*, 2025 WL 2856295, at *3.

### B. The FCC's Interpretation Of The Word "Call" Aligns Section 227(c)(5)'s Private Right of Action with the Rest of Statute.

Defendant's argument focuses on the use of the word "call" in Section 227(c)(5). But reading Section 227(c)(5) in context with the substantive DNC List provisions elsewhere in Section 227(c) provides additional confirmation that text messages are covered.

To see why, start with what is the core of Section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the DNC List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are communications "ma[de] or

7

transmitt[ed]" to a "telephone number." *Id*. And it is well-established that the residential telephone "subscriber[s]" protected by the DNC List include cell phone subscribers. *See* 2003 FCC Order, 18 FCC Rcd. at 14037–38. And courts have overwhelmingly agreed with that interpretation of the statute ever since. *See, e.g., Harriel v. Bealls, Inc.,* No. 8:25-cv-1165-TPB-SPF, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203, n.4 (S.D.N.Y. 2024) (collecting cases).

The term "telephone solicitation" also clearly encompasses text messages. The statute expressly defines a "telephone solicitation" to mean "a telephone ***call*** or ***message*** … which is transmitted to any person" for commercial purposes. 47 U.S.C. § 227(a)(4) (emphasis added). And this definition's reference to a "call or message" covers texts even more clearly than the word "call" standing alone. The "ordinary, contemporary, and common meaning" of the word "call" in the TCPA encompasses text messages. *Satterfield*, 569 F.3d at 953–54, n.3; *see supra*, Part I.A. So, both "call" and "message" describe communication with a phone, and neither differentiates between oral and written mediums.

More generally, the definition of "telephone solicitation" focuses not on a communication's form but whether it has "the purpose of encouraging" various kinds of commercial transactions. 47 U.S.C. § 227(a)(4); *see, e.g., Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025) (finding DNC List liability to depend on whether a text message was sent for a commercial purpose). At the same time, the statute uses broad and inclusive language to describe the myriad ways such a communication might be conveyed—the FCC is directed to prohibit "making or ***transmitting***" a telephone solicitation to "any" listed number, and a telephone solicitation is a "call *or* message" that is "transmitted to *any* person." 47 U.S.C. §§ 227(a)(4), (c)(3)(F) (emphases added)[4]. *See Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638,

---

[4] *See also, e.g., Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978) (explaining that "any person" has a "naturally broad and inclusive meaning"); *United States v. Krilich*, 159 F.3d 1020, 1028 (7th Cir. 1998) (finding a statute that used "any" multiple times "straightforward and broad").

8

643 (S.D. Tex. 2023) (rejecting an argument that "text messages are not actionable" under Section 227(c) because it "fails in the face of the statutory text, which refers to 'telephone call[s] or message[s]'"). The statutory definition of "telephone solicitation" therefore "makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted." *MEDVIDI*, 2025 WL 2856295, at *3.

Finally, the purpose of the DNC List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see also MEDVIDI*, 2025 WL 2856295, at *3; *Wilson v. Skopos Fin., LLC*, No 6:25-cv-00376-MC, 2025 WL 2029274, at *4 (D. Or. 2025). Indeed, nothing in the statute gives any suggestion that Congress thought "oral messages were more invasive or objectionable than written ones." *MEDVIDI*, 2025 WL 2856295, at *3.

### C. Defendant's Attempt to Push a Narrower Interpretation is Unpersuasive.

Defendant would have this Court interpret the DNC List provisions more narrowly, insisting that the word "call" in section 227(c)(5) can only mean "voice call," and therefore the statute categorically excludes text messages. Defendant's arguments mainly rely on *Jones*, an outlier decision. But none of the arguments made by Defendant or *Jones* are persuasive.

First, consider how Defendant reads the word "call" in section 227(c)(5). Defendant (parroting *Jones*) insists that "call" cannot encompass text messages because "text messaging was not an available technology in 1991." *Jones*, 2025 WL 2042764, at *4.

That's not how statutory interpretation works. Text messaging did not exist in 1991, so Congress didn't have it specifically in mind. *See MEDVIDI*, 2025 WL 2856295, at *2. But it is black-letter law that statutes are not "confined to the particular applications contemplated by

9

the legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980); *see also Hively v. Ivy Tech Cmty. Coll.*, 853 F.3d 339, 344–45 (7th Cir. 2017) (en banc). Instead, "statutes must be permitted to apply to technologies not in existence when a statute was drafted." *Lozano*, 702 F. Supp. 2d at 1008 (citing *Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984)).

Indeed, "[w]hile every statute's meaning is fixed at the time of enactment," it is commonplace that "new applications may arise in light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *MEDVIDI*, 2025 WL 2856295, at *2. In other words, the 1991 meaning of the word "call," which "refers to both oral and written communications," is what matters. *Id.*; *see Lozano*, 702 F. Supp. 2d at 1007.

Second, the holding of *Jones* is flawed for several reasons, namely, that the court failed to consider various FCC Orders entered since 2016 where the FCC held that the TCPA's DNC protections under Section 227(c) apply to text messages, despite the fact that the *Jones* court acknowledged that it must independently determine for itself whether the FCC's interpretation of the language of the TCPA is correct. *See Jones,* 2025 WL 2042764, at *3.

Following *Jones*, the Northern District of Illinois echoed this principle in *Moore v. Club Exploria, LLC*, where the Court rejected a similar argument raised by Defendant in this case and refused to throw out the FCC's interpretation of "prior express written consent" under the TCPA. "Exploria's reading of *McLaughlin* goes too far—the Supreme Court still instructed that district courts must 'afford[ ] appropriate respect to the agency's interpretation.' If this Court 'independently determine[s]' that the FCC's interpretation of the consent requirement is 'correct,' then the interpretation is not thrown out at all. *Id.* at 157." *Moore v. Club Exploria, LLC*, 2025 WL 2755076, at *9 (N.D. Ill., Sept. 26, 2025) (citing *McLauglin*, 606 U.S. at 155).

10

Indeed, in 2018, the FCC held, "It is illegal for persons or entities, including advertisers and marketers, to make marketing calls to telephone numbers listed on the DNC. This prohibition includes both voice calls ***and text messages***." *Sagar v. Kelly Auto. Grp.*, Inc., No. 21-cv-10540-PBS, 2021 WL 5567408, at *5 (D. Mass. Nov. 29, 2021) ("The FCC has since interpreted § 227(c) to include text messages.") (quoting *In re Hernandez*, 2018 WL 6830220 at *1) (emphasis added).

Next, in April 2023, the FCC "propose[d] to clarify that the National DNC Registry protections apply to text messages as well as voice calls and to codify this clarification in the Commission's rules." *Targeting & Eliminating Unlawful Text Messages*, 88 FR 20800, 20802 (Apr. 7, 2023). On December 18, 2023, the FCC issued its final rule, which amended 47 C.F.R. § 64.1200(e) to include text messages:

> We adopt our proposal to codify the National DNC Registry's existing protections to text messages. Texters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless number in the DNC Registry. The Commission previously concluded that the national database should allow for the registration of wireless telephone numbers and that such action will further the objectives of the TCPA and the Do-Not-Call Act. Our action is consistent with federal court opinions and will deter both illegal texts and make DNC enforcement easier.

2023 FCC Order, 38 FCC Rcd. at 12256-57 (citing *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195 (D. Mass. 2021); *Sagar*, 2021 WL 5567408; *Smosh Dot Com*, 72 F.4th at 986)).

The FCC explained its reasoning for clarifying and codifying the DNC protections to cover text message solicitations in the 2023 Order:

> Consumers increasingly rely on text messaging to stay in touch with friends and family, to do business, communicate with their child's school, and get information from their government. On many devices, people immediately see some or all of the messages once received on the device, whereas they have the option to ignore unwanted calls. This causes consumers to open their texts quickly because texts are an expected trusted source of communications, not annoyance and scams. **The rise of junk texts jeopardizes consumer trust in text messaging. The increase of unwanted and illegal texts also frustrate consumers, and scam texts can cause serious harm**. Scam texts can contain links to phishing campaigns and

11

> load malware onto unsuspecting consumers' phones, leading to fraud and other harms. The Federal Trade Commission (FTC) reports that text messaging scams cost consumers $86 million in 2020 and $326 million in 2022. Other estimates show higher losses, e.g., over $20 billion in 2022.

*Id.* at 12248-49 (emphasis added).

In fact, the *Jones* court noted that "[t]he Plaintiffs' position—that text messages are calls as the latter term is used in the TCPA—***is an eminently reasonable one***, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today." 2025 WL 2042764, at *5 (emphasis added). Defendant's own authority, it seems, disagrees with Defendant.

Moreover, *Jones* is currently on appeal to the Seventh Circuit. This Court should decline to follow a single outlier decision—one that conflicts with Supreme Court precedent, every Circuit Court to address the issue, and the vast majority of district courts—when the overwhelming weight of authority holds that text messages are "calls" under the TCPA.

District court splits regarding this particular issue are unremarkable—even within the state, federal courts routinely diverge. *Compare Bosley v. A Bradley Hospitality LLC*, No. 1:25-cv-22336, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025) ("There is no dispute that Plaintiff has adequately alleged the first two elements for both Counts I and II, given that a text message constitutes a "call" under the TCPA and the text messages were alleged to have been sent over the course of several months"), *with Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477-AW-MAF, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025) (holding texts are not calls). A single outlier decision does not overturn binding Supreme Court precedent, unanimous Circuit authority, and the consensus of district courts nationwide.

### D. Any Doubt that Section 227(c) Covers Text Messages Should be Resolved by Deferring to the FCC's Longstanding Interpretation.

The most accurate reading of the TCPA reveals that a "call" includes a text message. But if the language of the statute leaves the status of texts unresolved, that's because Congress expressly delegated authority to the FCC to "fill up the details" of the DNC List rules. *See*

*Loper Bright*, 603 U.S. at 395. Section 227(c) "explicitly delegates such authority." *Skopos Fin.,* 2025 WL 2029274, at *4 (D. Or. 2025). So, the FCC's longstanding and reasonable interpretation of the word "call" should still carry the day. *See id*.

Mere statutory ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). And district courts are not bound by the Hobbs Act to apply FCC interpretations; they can and should begin by making their own assessment of what the TCPA means. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). And, as discussed above, on September 26, 2025, this District confirmed that *McLaughlin* requires district courts to "'afford[] appropriate respect to the agency's interpretation.'" *Moore*, 2025 WL 2755076, at *9 (quoting 606 U.S. at 155).

Sometimes "the best reading of a statute is that it delegates discretionary authority to an agency." *Loper Bright*, 603 U.S. at 395. Courts thus still afford deference to agency interpretations when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id*. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decision-making" within them. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

Section 227(c) is an express delegation of that sort. In the TCPA's DNC List provisions, Congress didn't write the rules itself. Instead, it tasked the FCC with evaluating alternative approaches based on their "effectiveness in protecting . . . privacy rights" and their "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). And it empowered the FCC to make rules "that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E). That language grants discretionary authority to "fill up the details," and uses open-ended language that bestows "flexibility" to

13

best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395. In the telecommunications context, especially, an express delegation like this one is evidence that Congress expected technology "to evolve and therefore charged the [FCC] with the continuing obligation to define it." *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016). It follows that, if the statute itself doesn't resolve this question, Congress expected that the FCC would.

It therefore would honor Congress's intent here to "respect [that] delegation" and affirm the FCC's "reasoned decision making" on this question. *Loper Bright*, 603 U.S. at 395.

Exercising its delegated authority, the FCC reasonably explained that prohibiting texts to numbers on the DNC List "make[s] … enforcement easier" and "eliminate[s] any potential confusion in the industry." 2023 FCC Order, 38 FCC Rcd. at 12256-57. That conclusion aligns with the FCC's determination that cell phone numbers are eligible for protection, and that the statute's use of the word "call" confers protection from unwanted text messages in other TCPA contexts. *Id*. And that reasonable interpretation of the word "call" is one that the FCC has consistently adhered to for more than two decades, dating back to the earliest years of the technology, when text messaging first became common. *See* 2003 FCC Order, 18 FCC Rcd. at 14115; 2015 FCC Order, 30 FCC Rcd. at 8020; *In re Hernandez*, 2018 WL 6830220, at *1.

Alternatively, the FCC's interpretation is—at the very least—an "informed judgment" that should be accorded "great weight." *Loper Bright*, 603 U.S. at 388 (citing *Skidmore v. Swift Co.*, 323 U.S. 134, 139–40 (1944)). The FCC's position is grounded in the agency's expertise, consistent across decades, and well-reasoned. Those are the hallmarks of agency action with "the power to persuade." *Id*.; *Skidmore*, 323 U.S. at 140. The FCC's longstanding and consistent interpretation of the word "call" is thus an "informed judgment" to which this Court can "properly resort for guidance." *Loper Bright*, 603 U.S. at 388; *see MEDVIDI*, 2025 WL 2856295, at *3 (accepting the FCC's interpretation that "the term 'call' includes a text

14

message" as evidence of "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage").

### E. Plaintiff's Complaint Plausibly Pleads that Defendant Violated the TCPA.

Plaintiff's Complaint alleges viable claims under the TCPA. The factual allegations are straightforward: Defendant sent Plaintiff unsolicited text messages promoting its services between March and May 2025. Compl. at ¶¶ 13-16, 42-43, ECF No. 1. These text messages constitute "telephone solicitations" because they encouraged the purchase of Defendant's dental services. *Id*. at ¶¶ 28-29. As discussed, text messages are "calls" under the TCPA—a conclusion supported by the Supreme Court, every Circuit Court, the FCC, and Congress itself.

Plaintiff's telephone number was registered on the National DNC Registry at all relevant times. *Id*. at ¶¶ 32-34. Despite this registration, Defendant sent her multiple text messages in violation of 47 C.F.R. § 64.1200(c) and 47 U.S.C. § 227(c)(5), satisfying Count I.

Moreover, after Plaintiff responded with "STOP" on March 20, 2025—using the exact opt-out language prescribed by FCC regulations—Defendant continued bombarding her with unwanted text messages through at least May 2025. *Id*. ¶¶ 14-16, 44-50. Defendant's failure to honor Plaintiff's opt-out request within a reasonable time violates 47 C.F.R. § 64.1200(d), which requires entities to honor do-not-call requests within thirty days and to maintain procedures for processing such requests. This satisfies Count II.

Defendant does not challenge—and cannot challenge—the sufficiency of Plaintiff's factual allegations. Its Motion stands or falls on a single contention: that text messages fall outside the TCPA. That claim, as shown above, is wrong as a matter of law.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Rule 12(b)(6) Motion to Dismiss in its entirety.

Dated: November 4, 2025            Respectfully submitted,

**SHAMIS & GENTILE, P.A.**

*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
Illinois Bar No. 6337427
ashamis@shamisgentile.com
Christopher Berman, Esq.
cberman@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, FL 33132
Tel.: 305-479-2299

*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2025, I electronically submitted the foregoing document with the Clerk of the Court using the CM/ECF system. I hereby certify that I will serve all counsel of record and parties electronically by operation of the Court's CM/ECF system.

By: */s/ Andrew J. Shamis*
    Andrew J. Shamis, Esq.